**SOUTHEAST TRAINING CORP.,**
**Plaintiff,**

v.

**Raymond J. DONOVAN, Secretary of Labor, Defendant;**

**Management and Training Corporation, Intervening Defendant.**

**Civ. A. No. 84–1686.**

United States District Court, District of Columbia.

July 9, 1984.

---

**10.** Judge Wilkey was more expansive in his dis- cussion of FARA's constitutionality. *Id.* at 943.

**122**

Charles G. Preston, Jonathan H. Waxman, Washington, D.C., for plaintiff.

Richard A. Stanley, Asst. U.S. Atty., Washington, D.C., for defendant.

Carl L. Vacketta, Irving Jaffe, Washington, D.C., for intervening defendant.

## MEMORANDUM

GESELL, District Judge.

Plaintiff Southeast Training Corporation (STC), is a disappointed bidder in a negotiated procurement for operation of a Job Corps Center located at Kittrell, North Carolina. Numerous improprieties in the bid selection process are alleged. Management and Training Corporation (MTC), the successful bidder who took over operation of the Center under contract with the Secretary of Labor when the previous contract held by STC was completed, has intervened as a defendant. STC seeks by its complaint to have MTC's contract set aside.

MTC's contract was awarded on April 27, 1984. Performance began on June 1, 1984. On the day of the award STC filed a bid protest with the General Accounting Office (GAO), still pending, which raises many of the same issues presented here. The present lawsuit, however, was not filed until May 31, 1984, the day before the new contract was scheduled to go into effect. At a hearing held that day the Court entered a Temporary Restraining Order preventing the Secretary from implementing the MTC contract, upon posting of a bond by plaintiff in the amount of $50,000. The bond was never posted, and MTC commenced performance of the contract on June 1 and has been operating the Center ever since.[1] A hearing on plaintiff's motion for preliminary injunction was held on June 8, 1984. At this hearing plaintiff no longer attempted to establish the alleged improprieties which prompted the Temporary Restraining Order but instead raised entirely different claims.

At the June 8th hearing on plaintiff's motion the Court indicated that it might consolidate that hearing with a trial on the merits pursuant to F.R.Civ.P. 65(a)(2). At plaintiff's request, it was granted until June 15 to file additional papers, and defendants were given until June 22 to address the new issues raised by plaintiff. For the reasons given below the Court has concluded that consolidation is appropriate and, inasmuch as plaintiff has failed to produce evidence entitling it to an injunction from the Court, plaintiff's claim for preliminary relief must be denied and the complaint dismissed.

A disappointed bidder such as STC seeking injunctive relief "bear[s] a heavy bur-

---

1. The Temporary Restraining Order was vacated on June 8, 1984, upon motion of MTC.

den of showing either that (1) the procurement official's decision on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron Hawaii Limited v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973). Plaintiff has failed to meet this heavy burden.

Plaintiff's principal claims reduce to three basic contentions. The first is that plaintiff was unfairly prejudiced because the contracting officer failed to alert it to "concerns" expressed by the members of the panel which reviewed the technical aspects of the competing proposals, so that STC did not have an opportunity to address those concerns in an effort to increase its technical rating. The second claim is that the contracting officer failed to evaluate the reasonableness of MTC's cost proposal, which STC argues was "not credible." Third, plaintiff alleges that assignment of certain members to the reviewing panel was improper.

Plaintiff's contention that the award to MTC was improper because the technical review panel "team chief" and the contracting officer failed to inform STC of "concerns" raised by that panel with respect to its proposal fails to meet the standard enunciated in *Kentron*, for three separate reasons.

First, plaintiff's factual showing in support of its allegations is very weak. One witness, Robert Jones, a member of the technical review panel, testified that a single concern he had about *both* proposals was not to his knowledge communicated to either bidder, and that he believed other members of the panel also had concerns

which were not addressed. The government presented evidence, however, which indicated that Mr. Jones' concern could be resolved by information already in the hands of the contracting officer. The contracting officer was not bound by the recommendations of the evaluation panel and was the final decisionmaker. The Court concludes that the evidence does not support plaintiff's assertion that significant concerns raised by panel members were not transmitted to STC.[2]

Second, plaintiff has failed to identify a single statute or regulation which *requires* transmittal of all concerns raised by panel members to the contracting officer. Two specific regulatory provisions were cited which require the contracting officer to "advise the offeror of deficiencies in its proposal so that the offeror is given an opportunity to satisfy the Government's requirements."[3] These regulations, however, do not require the contracting officer to communicate "concerns" of panel members unedited, but instead would appear only to require the contracting officer to transmit what *he* reasonably concluded were "deficiencies." Nothing in the record points to any "deficiencies" in STC's proposal which should have been communicated to it. Thus no "clear" violation of applicable regulations has been shown.[4]

Finally, there is no evidence whatsoever to suggest that STC was prejudiced in any way by any failure to communicate to it any concerns voiced by the panel members. As noted above, none of these concerns appear to have been significant. No evidence suggests the two offerors were treated differently in this regard. And

---

**2.** Note report of Mr. Donald A. Buchanan on issues raised by plaintiff in its administrative complaint, Def.Ex. 2, ¶ 6.

**3.** 48 C.F.R. § 15.610(c)(2). *See also* 41 C.F.R. § 29–3805–51–54.

**4.** Plaintiff points to language in an internal agency "Review Guide" which states that a letter to be sent to offerors whose proposals are competitive "also contains a list of all concerns raised by the reviewers." Plf.Ex. 9, at p. IV–137. This language, however, refers to concerns

raised with respect to cost reasonableness, and there is no evidence that concerns raised by those on the cost panel, as opposed to those of the technical panel, were not transmitted to the offerors. Additionally, it is questionable whether this language is binding in any way. *Compare Georgia Gazette Publishing Co. v. U.S. Dept. of Defense*, 562 F.Supp. 1004 (S.D.Ga.1983), *with Robert E. Derecktor for Rhode Island, Inc. v. Boston Shipyard Corp.*, Comp.Gen.Dec. B–211922.2, 84 C.P.D. ¶ 140 (1984).

plaintiff offers little, if any, support for the proposition that if these concerns had been passed through it would have caused STC to change its proposal, the panel members their scores or the contracting officer his decision to award the contract to MTC. Plaintiff has thus failed to show either a clear departure from applicable regulations or any prejudice to its interests.

Plaintiff's second principal point is that the contracting officer failed to evaluate the reasonableness of MTC's cost proposal. Here its burden is especially heavy. As our Circuit noted:

> Since decisions on cost realism and feasibility are squarely within the area of the contracting officer's expertise, this court cannot second-guess such a determination unless it is not supported by any reasonable basis. Conversely, in order to prevail on this ground, [the disappointed bidder] would have to demonstrate that the contracting officer could *only* reasonably have concluded that [the winning bidder's] proposal was not feasible.

*Kentron,* 480 F.2d at 1172 [footnote omitted; emphasis in original].

Plaintiff presented evidence that the contract specialist, Mr. Chamblers, suggested that the MTC proposal was not cost reasonable, but that the contracting officer did not discuss this recommendation with him. The contracting officer, of course, was not in any way bound by this recommendation. No evidence, other than the opinion of Mr. Chamblers, was introduced to show that MTC's bid was unreasonably low. No underlying data or specific expert testimony was presented. Mr. Chamblers did not offer an adequate explanation as to how his conclusion was reached. The government presented evidence that the concerns raised by Mr. Chamblers were in fact considered by the contracting officer,[5] and evidence presented by MTC justified the amount bid. The Court concludes that plaintiff has utterly failed to show that the contracting officer could *only* conclude that MTC's bid was unreasonable.

Plaintiff's third contention is that two individuals were improperly assigned to the review panels, namely Mr. Bill Eudy and Mr. James Blackburn.

Mr. Eudy was assigned as team chief of the technical review panel. Plaintiff alleges that at the time of his assignment he was Project Manager of the Kittrell Center, and argues that this violated internal agency policy, pointing to Exhibit B, an internal investigative report, which states that "Job Corps policy prohibits project manager who is assigned to a center to participate [sic] as panel chairman in the contract procurement for that center." ¶ 3. That report also states, however, that "the assignment of Mr. Eudy was in accordance with the Atlanta Regional Office procedures. . . . The procedures followed are in accordance with Job Corps Policy ETO 3–82." ¶ 2.

Defendant asserts that Mr. Eudy was assigned only briefly as project manager at Kittrell, and that he left this position before becoming panel team chief on the procurement. Neither party offers any proof which would allow the Court to resolve these conflicting factual assertions. Neither party has brought to the Court's attention "Job Corps Policy ETO 3–82" or any other policy statement relating to assignment of team chiefs. Based on Def.Ex. B, it is impossible to tell if any internal agency policy has been violated by Mr. Eudy's assignment. Although it is not clear that a violation of internal policy will support an injunction,[6] even if this were so, therefore, plaintiff has failed to demonstrate any violation of internal policy.

As to Mr. Blackburn, plaintiff has submitted an affidavit by Mr. Curtis Hunter, which states in full:

> I Curtis Hunter being duly sworn, state as follows: I had lunch with Mr. Blackburn during the early stages of the Kittrell procurement on or about January 5, 1984. During a conversation Mr. Blackburn stated that he did not like South-

---

5. *See* Def.Ex. I.

6. *See* footnote 4, *supra.*

 

eastern Training Corporation and he didn't like Erskine Hawkins. I hope they lose this contract because I don't think they should ever have had the contract. This negative statement made by Mr. Blackburn was communicated to a National Job Corps official in the Washington Office. It was my feeling that inasmuch as Mr. Blackburn was a panel member for the Kittrell procurement, it was important that this communication be shared with someone other than myself.

The government has submitted an affidavit by Mr. Blackburn in which he flatly denies the statements attributed to him. Neither Mr. Hunter nor Mr. Blackburn appeared as a witness at the hearing, and their affidavits did not come to light until post-hearing briefs were filed.

On its face the Hunter affidavit does not show to whom in the Washington office of Job Corps his comments were transmitted to, or whether that official had any responsibility to relay this information to those who chose Mr. Blackburn for the panel. No other evidence was introduced which showed that Mr. Blackburn might be biased against STC. Based on such scanty and conflicting evidence the Court simply cannot conclude that Mr. Blackburn was biased against STC or that the agency violated any regulatory or statutory provision in appointing him to the review panel. Certainly no "clear" violation of such a provision has been shown. Accordingly, on this point as well the Court concludes that plaintiff has failed to meet the standards set forth in *Kentron.*[7]

Plaintiff, who initially made allegations of gross disregard of procurement regulations and basic standards of fair dealing in its application for a TRO, has simply failed to provide factual evidence which would support a grant of injunctive relief. This Court can intervene only upon a showing of a "clear and prejudicial" violation of applicable statutes or regulations. Plaintiff has

been given an opportunity to make such a showing and has failed to do so, and it is clear that no such violation has taken place. Further proceedings, which would involve the Court in a contract already awarded and in the midst of performance, are not warranted. Accordingly, for the reasons stated above plaintiff's claim for injunction must be denied and the complaint dismissed.[8] An appropriate Order is filed herewith.

---

7. Plaintiff's remaining claims are clearly groundless and need not be discussed.

8. This result does not, of course, necessarily preclude plaintiff from pursuing its rights before the GAO or in the Court of Claims.